# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1388V

* * * * * * * * * * * * * * * * * * * * * * * *   *

EVELIN RIVERA CRUZ,

                 Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                 Respondent.

* * * * * * * * * * * * * * * * * * * * * * * *   *

Special Master Jennifer A. Shah

Filed: February 24, 2025

*Shandra S. Kisailus*, Kisailus Law Firm LLC, Wilkes-Barre, PA, for Petitioner.
*Austin Joel Egan*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 12, 2018, Evelin Rivera Cruz[2] ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[3] (the "Vaccine Act" or "Program") alleging that she suffered from Guillain-Barré syndrome as a result of an influenza vaccination she received on September 16, 2015.  ECF No. 1 ("Pet.") at 1.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner originally filed under the name Evelin Lopes; however, Petitioner changed her legal name to Evelin Rivera Cruz and an order to amend the caption was issued on August 17, 2023.  ECF No. 73.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

After the petition was filed, Petitioner filed a number of medical records. On December 16, 2019, Respondent filed a Rule 4(c) Report contesting entitlement. ECF No. 30. Thereafter, the parties filed several rounds of expert reports. On July 20, 2023, an entitlement hearing was held before former Special Master Katherine E. Oler. Both parties submitted post-hearing briefs. ECF Nos. 76, 78, 79.

Petitioner filed a motion for interim attorneys' fees and costs on July 18, 2024, requesting a total of $95,576.95. ECF No. 81 ("Fees App.") at 3. This is her first motion for interim fees and costs. Respondent filed a response on August 9, 2024, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 83 ("Fees Resp.") at 4. Petitioner filed a reply on August 16, 2024. ECF No. 85 ("Fees Reply"). Petitioner has not incurred any personal costs. Ex. 35 at 1.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$94,448.55** in interim attorneys' fees and costs.

## I.    Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer,* the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera,* 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera,* 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera,* 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera,* 515 F.3d at 1352; *Shaw,* 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs,* 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear,* 2013

WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id.*

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis. . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.    Discussion

### A.  Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008). Here, Petitioner's attorney has worked on this case since 2018 and has not yet been awarded interim fees or costs. Fees App. at 1. Counsel has retained experts and filed three expert reports, participated in an entitlement hearing, and submitted post-hearing briefing. ECF Nos. 37, 43, 48, 76, 69. Under these circumstances, I find that Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 3–4. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. In making a reasonable basis determination, I must look at the totality of the circumstances, considering the factual basis for the claim and the medical and scientific support offered. Petitioner has filed extensive medical records and several expert reports, and this case proceeded to an entitlement hearing. I find that Petitioner has maintained a reasonable basis for her claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs as described below.

### C. Attorneys' Fees

Petitioner requests a total of $72,023.70 in attorneys' fees, $40,836.70 for Kisailus Law Firm LLC ("KLF") and $31,187.00 for Bosson Legal Group ("BLG"). Fees App. at 2.

#### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner requests compensation for her primary counsel, Shandra S. Kisailus, at the following hourly rates: $203.00 per hour for work performed in 2018; $218.00 per hour for work performed in 2019; $228.00 per hour for work performed in 2020; $248.00 per hour for work performed in the first half of 2021 and $255.00 per hour for work performed in the second half of 2021; $275.00 per hour for work performed in 2022; $295.00 per hour for work performed in 2023; and $315.00 per hour for work performed in 2024. Fees App., Ex. 32. Ms. Kisailus also requests rates ranging from $60.00 to $93.00 for paralegal work performed from 2018 to 2023. *Id*.

Petitioner requests compensation for her secondary counsel, Isaiah Kalinowski, at the following hourly rates: $430.00 per hour for work performed in 2023 and $480.00 per hour for work performed in 2024. Fees App., Ex. 34.

---

[4] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2024 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are updated based on the decision in *McCulloch*, 2015 WL 5634323.

This is Ms. Kisailus' first case in the Vaccine Program; therefore, her hourly rate has not been set. Ms. Kisailus practices law in Wilkes-Barre, Pennsylvania, which is not considered "in forum"; however, Ms. Kisailus has appropriately adjusted her rates downward to account for Wilkes-Barre being out of forum. Fees App., Ex. 36 at 3–4. Additionally, Ms. Kisailus was admitted to practice law in Pennsylvania in October 2013, meaning that she had 4 to 5 years of experience when she began working on this matter. *Id*. at 1. Based on my experience, the hourly rates requested by Ms. Kisailus for her work are reasonable. However, in 2021, Ms. Kisailus' rate increased from $248.00 for work performed in the first half of the year to $255.00 for work performed in the second half of the year. Fees App., Ex. 32 at 5–6; Ex. 36 at 3. This appears to reflect a mid-year rate increase of $7.00. Although the size of the proposed increases is not *per se* objectionable, it is not the practice of the Office of Special Masters to afford mid-year rate increases to attorneys under any circumstances. *Hughes v. Sec'y of Health & Hum. Servs.*, No. 20-1548V, 2024 WL 1253782, at *3 (Fed. Cl. Spec. Mstr. Feb. 28, 2024); *Noorani v. Sec'y of Health & Hum. Servs.*, No. 16-970V, 2024 WL 3913519, at *5 (Fed. Cl. July 10, 2024).

Accordingly, I reduce Ms. Kisailus' rate to $248.00 per hour for work performed throughout 2021; Ms. Kisailus' requested rates for 2018–2020 and 2022–2024 are awarded in full. Additionally, I find Ms. Kisailus' requested paralegal rates to be reasonable based on the Fee Schedule for 2018–2024, and I will award the requested paralegal rates in full.

Mr. Kalinowski's requested rates are consistent with what he has previously been awarded and are in accordance with the Office of Special Masters' Fee Schedule. *See Bechel v. Sec'y of Health & Hum. Servs.*, No. 16-887V, 2023 WL 9060369, at *3 (Fed. Cl. Nov. 30, 2023); *Godfrey v. Sec'y of Health & Hum. Servs.*, No. 17-1419V, 2023 WL 5666162, at *5 (Fed. Cl. Aug. 15, 2023). Accordingly, I find Mr. Kalinowski's requested rates are reasonable and that no adjustment is warranted; Mr. Kalinowski's rates are awarded in full.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

Ms. Kisailus' invoice includes several charges for clerical and administrative tasks. The majority of these entries describe paralegals' efforts to obtain Petitioner's medical records, processing of invoices, and scanning of documents. Fees App., Ex. 32. Examples include (but are not limited to):

- May 5, 2018, 0.1 hours: "Draft request for medical records to Dr. Clifford Reed [treating neurologist]"

- July 3, 2019, 0.4 hours: "Scan Dr. Yoo records into firm's e-file"

- February 18, 2020, 0.1 hours: "Review invoice [Center for Pain Control]; forward to bookkeeping"

- August 28, 2022, 0.1 hours: "Forward payment with invoice for Penn State."

*See id.* These clerical and administrative tasks total approximately 12.6 hours, resulting in charges of $878.40. Accordingly, I find that a $878.40 reduction in attorneys' fees for Ms. Kisailus is appropriate; Petitioner is awarded final attorneys' fees for Ms. Kisailus' work in the amount of $39,958.30.

Additionally, Petitioner's counsel has provided a breakdown of hours billed and costs incurred for Mr. Kalinowski's work. Fees App. Ex. 34. The overall hours spent on this matter appear to be reasonable. I have reviewed the billing entries and find that they adequately describe the work done on the case and the amount of time spent on that work. None of the entries appear

objectionable, nor has Respondent identified any entries as objectionable.  Accordingly, Petitioner is awarded final attorneys' fees for Mr. Kalinowski's work in the amount of $31,187.00.

I award Petitioner a total of **$71,145.30** in attorneys' fees.

### D. Reasonable Costs

Petitioner requests a total of $23,553.25 for costs between Ms. Kisailus and Mr. Kalinowski. For Ms. Kisailus' costs, Petitioner requests $21,200.00 for expert costs; $1,655.30 for medical record requests; $12.15 for mailing costs; and $684.00 for the hearing transcript. Fees App., Ex. 33 at 1.  For Mr. Kalinowski's costs, Petitioner requests $1.80 for PACER Docket Reports.  Fees App., Ex. 34 at 4.

Petitioner provided documentation of the medical record requests, mailing costs, transcript, and PACER Docket Reports. Fees App., Ex. 33 at 2–21, 23–32; Ex. 34 at 4.  I find the costs for these items to be reasonable and award them in full.  I discuss the costs for Petitioner's experts below.

#### 1. Petitioner's Expert Costs for Clifford Reed, M.D.

Petitioner requests $1,200.00 for a narrative report prepared by Dr. Clifford Reed: 3 hours billed at an hourly rate of $400.00. Fees App., Ex. 33 at 1, 34.  Petitioner has provided adequate documentation supporting the requested costs, and all appear reasonable.  Petitioner is reimbursed $1,200.00 for Dr. Reed's work.

#### 2. Petitioner's Expert Costs for Norman Latov, M.D., Ph.D.

Petitioner requests $20,000.00 for work performed by Dr. Norman Latov: 39.5 hours, billed at an hourly rate of $500.00. Fees App., Ex. 33 at 1, 35–38.  Although an hourly rate of $500.00 is high in the Vaccine Program, Dr. Latov has previously been awarded this rate, and I see no reason to decline this request.  *See Stepp v. Sec'y of Health & Hum. Servs.*, No. 14-851V, 2018 WL 793426, at *2 (Fed. Cl. Jan. 2, 2018); *Sarver v. Sec'y of Health & Hum. Servs.*, No. 15-1207V, 2019 WL 3856864, at *3 (Fed. Cl. July 22, 2019).  However, due to a mathematical error, Petitioner's request for $20,000.00 for work performed by Dr. Latov is reduced to $19,750.00. Dr. Latov's invoice dated July 21, 2023, incorrectly charged $5,500.00 for "10.5 hrs at $500 per hr." Fees App., Ex. 33 at 38.  10.5 hours billed at an hourly rate of $500.00 is $5,250.00, not $5,500.00.  It follows that the 39.5 hours billed by Dr. Latov at an hourly rate of $500.00 should total $19,750.00, not $20,000.00.  Accordingly, Petitioner's request for $20,000.00 for Dr. Latov's work is reduced by $250.00 and Petitioner is reimbursed $19,750.00 for Dr. Latov's work.

I award Petitioner a total of **$23,303.25** in attorneys' costs.[5]

---

[5] For Ms. Kisailus' costs, Petitioner is awarded $1,655.30 for medical records, $12.15 for mailing costs, $684.00 for transcripts, $1,200.00 for Dr. Reed's work, and $19,750.00 for Dr. Latov's work; for Mr. Kalinowski's costs, Petitioner is awarded $1.80 for PACER Docket Reports; for a total award of $23,303.25.

### III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim attorneys' fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application.  Petitioner is awarded interim attorneys' fees and costs in the total amount of **$94,448.55** as follows:

- A lump sum in the amount of **$63,259.75**, representing reimbursement of Petitioner's interim attorneys' fees and costs[6], to be paid through an ACH deposit to Petitioner's primary counsel of record, Ms. Shandra S. Kisailus' IOLTA account for prompt disbursement; and

- A lump sum in the amount of **$31,188.80**, representing reimbursement of Petitioner's interim attorneys' fees and costs[7], to be paid through an ACH deposit to Petitioner's secondary counsel, Mr. Isaiah Kalinowski's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[6] $39,958.30 in attorneys' fees and $23,301.45 in costs; totaling $63,259.75.

[7] $31,187.00 in attorneys' fees and $1.80 in costs; totaling $31,188.80.

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.